IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA MUNICIPAL INSURANCE CORPORATION, a non-profit corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 2:20cv300-MHT (WO) |
| MUNICH REINSURANCE AMERICA, INC., a foreign corporation, | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Alabama Municipal Insurance Corporation (AMIC) brings this lawsuit against defendant Munich Reinsurance America, Inc., alleging that Munich failed to honor fully several claims for coverage. AMIC asserts five counts of breach of contract and three counts of bad-faith refusal to pay, both under Alabama law. Diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.

Munich has moved to dismiss counts four, six, and eight--the counts alleging bad faith--for failure to

state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the dismissal motion will be granted; in addition, AMIC's pending motion to amend its complaint, which seeks to add an additional count of bad faith, will be denied.

## I. BACKGROUND

At issue in this case are a series of claims AMIC, a non-profit insurance company owned collectively by various Alabama municipalities, filed with Munich, its reinsurer. The parties had entered into several contracts for reinsurance, under which AMIC paid premiums to Munich, and Munich agreed to be liable for a portion of any claims received by AMIC that exceeded a certain base amount.

AMIC argues that, beginning in 2015, Munich declined to pay the full amount due on five separate insurance claims, underpaying by approximately $ 1.9

million in total. AMIC sued, asserting breach of contract on all five insurance claims and bad-faith refusal to pay on three of the claims. Munich moved to dismiss all three counts of bad-faith refusal to pay, arguing that they failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Alabama does not recognize the tort of bad faith in the reinsurance context.

AMIC has moved for leave to file an amended complaint to add another count of bad faith. Since this motion involves the same underlying question of whether the tort is recognized under Alabama law for reinsurance contracts, the court will decide it together with the motion to dismiss.

## II. LEGAL STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and

construes the complaint in the plaintiff's favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Ordinarily, leave to amend a complaint should be freely given. *See* Fed. R. Civ. P. 15(a)(2). However, if amending the complaint would be futile, the court need not allow it. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "[W]hen the complaint as amended is still subject to dismissal," denial of leave to amend is justified by futility. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

## III. DISCUSSION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), this court is bound to apply state law, and the parties agree that this dispute is governed by Alabama

law. However, the Alabama Supreme Court has not addressed the question whether reinsurance falls within the limited category of insurance agreements to which the tort of bad faith applies. *See Regions Bank v. Old Republic Union Ins. Co.*, No. 2:14cv517, 2016 WL 11622129, at *7 n.15 (N.D. Ala. Jan. 20, 2016) (Hopkins, J.) (noting that there is an "absence of any on-point authority from the Supreme Court of Alabama which either embraces or rejects a bad faith reinsurance claim"). Lacking any such precedent, the court must apply the rule it believes the Alabama Supreme Court would adopt. *See Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982). In other words, this court must make an "educated guess" as to what Alabama courts--and particularly the Alabama Supreme Court--would decide if faced with this question. *See Nobs Chem., U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 214 (5th Cir. 1980) ("Where no state court has decided the issue a federal court must 'make

an educated guess as to how that state's supreme court would rule.'").[1]

Given the Alabama Supreme Court's repeated efforts to limit the application of the tort, as well as its emphasis on the primary purpose of the tort as a means to protect consumers, this court concludes that the Alabama Supreme Court would not extend the tort of bad faith to the reinsurance context.

The tort of bad faith for breach of contract comes in several forms, but the one relevant to this case is first-party bad faith--that is, a claim by the holder of an insurance policy that her insurance company has breached its duty of good faith and fair dealing. The tort was first recognized in this context by the California Supreme Court in *Gruenberg v. Aetna Insurance Co.*, 510 P.2d 1032 (Cal. 1973). It was adopted by the Alabama Supreme Court several years

1. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the

later in *Chavers v. National Security & Casualty Co.*, 405 So. 2d 1 (Ala. 1981).  The tort, sometimes called bad-faith failure to pay, applies when an insurance company denies a policyholder's claim despite either knowing that it had no reasonable basis to do so or failing to investigate sufficiently.  It offers the policyholder the opportunity to sue the insurance company in tort and thus to claim relief that would not be available in an action founded on contract, such as damages from mental anguish, additional economic losses, and punitive damages.

Although every contract contains an implied duty of good faith, the tort of bad faith has generally been limited to the insurance context because of the special relationship that courts have identified between insurer and insured.  *See* Stephen D. Heninger, *Bad Faith in Alabama: An Infant Tort in Intensive Care*, 34 Ala. L. Rev. 563, 564 (1983).  An important aspect of

---

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**this relationship is that it is "inherently unbalanced": Since the average insurance contract is one of adhesion, with no room for the insured to negotiate or set her own terms, "the insurer [is] in a superior bargaining position."** ***Egan v. Mutual of Omaha Ins. Co.*****, 620 P.2d 141, 146 (Cal. 1979). The tort of bad faith was developed in an effort to "restore balance in the contractual relationship" by giving the insured another avenue through which to protect her rights.** ***Id.***

**The typical relationship between insurer and insured is also distinguished by the fact that, unlike many other contracting parties, the insured generally does not contract to obtain a commercial advantage.** ***See*** **Victoria A. Myers, Note,** ***The New Tort of Bad Faith Breach of Contract:*** **Christian v. American Home Assurance Corp., 13 Tulsa L.J. 605, 615 (1978). Instead, she is generally motivated by the need for security or peace of mind in the event of "loss,**

physical injury, sickness or death." *Id.* at 614. The tort of bad faith was intended to compensate for the particular vulnerability of the insured, who must rely on the insurer when she is at her "weakest and most perilous time of need." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 527 F. Supp. 277, 282 (N.D. Ala. 1981) (Propst, J.), *aff'd*, 703 F.2d 1361 (11th Cir. 1983).

Application of the tort has been particularly limited in Alabama. Indeed, the Alabama Supreme Court has been described as having "retreated from the broad language originally used" to define bad faith because it has come to apply the tort so narrowly. *Goudy Constr. Inc. v. Raks Fire Sprinkler LLC*, No. 2:19cv1303, 2019 WL 6841067, at *4 (N.D. Ala. Dec. 16, 2016) (Proctor, J.). In case after case, the court has firmly refused to extend the tort beyond the insurance context. *See, e.g.*, *United Am. Ins. Co. v. Brumley*, 542 So. 2d 1231, 1239 (Ala. 1989) (policy

**considerations, including unequal bargaining position and the insured's heightened vulnerability, "uniquely fit the insurance industry, so the classification of insurance companies as the sole potential defendants in bad faith actions is reasonable");** ***Gaylord v. Lawler Mobile Homes, Inc.*****, 477 So. 2d 382, 383-84 (Ala. 1985) ("The tort of bad faith has been recognized in this state only within the insurance policy context.");** ***Kennedy Elec. Co. v. Moore-Handley, Inc.*****, 437 So. 2d 76, 81 (Ala. 1983) ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases at this time.").**

**Even within the realm of contracts that are classified as 'insurance,' the tort is not uniformly available in Alabama. Alabama broadly defines insurance as, "A contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies." Ala. Code § 27-1-2(1). And the Alabama Supreme Court has**

characterized insurance as "a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency." *Schoepflin v. Tender Loving Care Corp.*, 631 So. 2d 909, 911 (Ala. 1993). Any number of contracts, including reinsurance contracts, could fall within the scope of these definitions. However, the Alabama Supreme Court has made clear that a contract may be considered insurance for some purposes but not others. *See Ala. Ins. Guar. Ass'n v. Ass'n of Gen. Contractors Self-Insurer's Fund*, 80 So. 3d 188, 203 (Ala. 2010); *see also* Graydon S. Staring & Dean Hansell, Law of Reinsurance § 1:2 (2020 ed.) ("Whether 'insurance' includes reinsurance depends ... on whether the particular statute or doctrine is appropriate to reinsurance."). As a result, the fact that a contract could fall within Alabama's definition of insurance is inconclusive in determining whether the

**tort of bad faith applies--and in practice, Alabama courts have applied the tort to only a limited subset of agreements, specifically those that most resemble typical insurance contracts.**

**For example, the Alabama Supreme Court has declined to apply the tort of bad faith to suits between primary and excess insurers, finding that, "The reasons which undergird Alabama's tort of bad faith ... are simply not present in the primary-insurer/excess-insurer scenario."** ***Fed. Ins. Co. v. Travelers Cas. & Sur. Co.*****, 843 So. 2d 140, 143 (Ala. 2002).[2] The court noted that a primary insurer is not forced to rely "on the abilities and the good faith" of an excess insurer in**

---

**2.** ***Federal Insurance*** **involved a third-party bad-faith claim, based on failure to settle a case rather than failure to pay a claim. However, the policy rationale underlying the tort of bad faith is the same in the third-party context as it is in the first-party context, and the Alabama Supreme Court has been equally reluctant to extend the application of either version of the tort.** ***See Fed. Ins. Co*****, 843 So. 2d at 143 (citing** ***Chavers*****, a first-person tort of bad faith case, in discussing the policy rationale underlying the tort).**

**the same way a typical insured is and that a primary and excess insurer stand on more equal footing, without an obvious power disparity. *Id.* Lacking evidence that the policy considerations underlying the tort of bad faith were present in the context of excess insurance, the court refused to extend the tort. *Id.* at 144.**

**Similarly, a United States District Court held that the Alabama Supreme Court would not choose to extend the tort to suretyships, despite the fact that they are regulated in the Alabama Insurance Code. In *Goudy Construction*, the court concluded that the inclusion of sureties in the code was "not dispositive" and found they are not among the type of agreements for which the Alabama Supreme Court intended the tort of bad faith to be available. 2019 WL 6841067, at *5.**

**As it has determined the situations in which the tort of bad faith applies, the Alabama Supreme Court has emphasized the underlying policy rationale and the fact that it is based on a typical insurance**

relationship.  *See Chavers*, 405 So. 2d at 6 (explaining that the court's "recognition of a redressable tort for intentional breach of good faith" was mandated by "inherent policy considerations"); *see also Peninsular Life Ins. Co. v. Blackmon*, 476 So. 2d. 87, 89 (Ala. 1985) (noting that the tort had "heretofore been applied only in those situations where a typical insurer/insured relationship existed").  The tort was designed to protect the insured when she is at her most vulnerable, not to be used by insurance carriers for their own economic advantage, and courts have strictly limited its application to the sorts of contracts that vindicate this animating principle.

While the Alabama code sections regulating reinsurance, Alabama Code §§ 27-5a-1 et seq. and §§ 27-5b-1 et seq., are codified within the title on insurance, reinsurance does not implicate the concerns about differences in bargaining power or vulnerability of the insured that underly the tort of bad faith.  *See*

*Cal. Joint Powers Ins. Auth. v. Munich Reinsurance Am., Inc.*, No. CV 08-956, 2008 WL 1885754, at *3-4 (C.D. Cal. Apr. 21, 2008) (Fischer, J.); *Stonewall Ins. Co. v. Argonaut Ins. Co.*, 75 F. Supp. 2d 893, 908 (N.D. Ill. 1999) (Norgle, J.). Unlike the vast majority of insureds, who must accept insurance on a "take-it-or-leave-it basis," insurance companies seeking reinsurance coverage generally engage in negotiations, and they do so on relatively even footing. *Cal. Joint Powers*, 2008 WL 1885754, at *3. Both parties to a reinsurance contract are sophisticated entities with bargaining power and access to legal counsel. *See* Staring & Hansell, Law of Reinsurance § 18:2. They each come to the table with a deep knowledge of insurance and an understanding of various contractual terms and conditions. *See Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1335 (11th Cir. 1999). Indeed, an insurance company is perfectly capable of "incorporating risk of

non-payment into its reinsurance agreement," an option that is unavailable to the insured in a typical insurance contract. *Cal. Joint Powers*, 2008 WL 1885754, at *4.

Insurance companies are also motivated to enter reinsurance contracts by fundamentally different concerns than most insureds. "[T]he avowed purpose of the insurance contract [is] to protect the insured at his weakest and most perilous time of need." *Chavers*, 405 So. 2d at 6. However, insurance companies are not purely seeking protection from peril when they enter reinsurance contracts--they are also concerned with obtaining a commercial advantage. *See Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 452 (Ala. 1991) (finding that where both parties were commercial enterprises, "represented by counsel during negotiations and upon execution of the [] agreement," neither could be described as "at its weakest or most perilous time of need"). Having reinsurance allows a

company to "contract[] for its own protection against liability in whole or in part for losses which it may suffer under risks which it continues to carry." *U.S. Fire Ins. Co. v. Smith*, 164 So. 70, 75 (Ala. 1935). This offers the company an opportunity to "write more policies than [its] reserves would otherwise sustain," which can be a profitable advantage. *Cal. Joint Powers*, 2008 WL 1885754, at *3. In refusing to extend the tort of bad faith to commercial contracts, the Alabama Supreme Court emphasized that the policy considerations underpinning its recognition of the tort are "not present in the context of contracts between [] private parties" who are "both commercial enterprises." *Tanner*, 582 So. 2d at 452. That reasoning is just as applicable here, and it strongly suggests that the Alabama Supreme Court would be unwilling to recognize the tort in the reinsurance context.

The fact that AMIC in particular is a non-profit entity composed solely of Alabama municipalities does

not change the fact that the policy considerations generally do not support extending the tort into this context. As AMIC points out, recognizing the tort in the traditional insurance context may sometimes benefit sophisticated actors, while choosing not to extend it to the reinsurance context may leave some vulnerable consumers unprotected. However, the Alabama Supreme Court's approach to extending the tort has considered each potential new context as a whole rather than focusing on the individual characteristics of the parties in a particular case. Based on that approach, the court cannot conclude that AMIC's unique characteristics justify finding that the tort of bad faith should apply broadly to reinsurance contracts.

"Because most of the policy considerations that support tort liability in the insurance context do not apply in the reinsurance context," *Cal. Joint Powers*, 2008 WL 1885754, at *5, this court cannot find that the Alabama Supreme Court would choose to expand the tort

to those reinsurance contracts. Insurance companies trying to protect their ability to pay out huge claims are simply not the sort of plaintiff the Alabama Supreme Court sought to protect in establishing the tort of bad faith. This legal battle between two insurance companies does not support the application of the tort of bad faith.

* * *

An appropriate order will be entered.

DONE, this the 16th day of March, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE